Next case is Chavez v. Hott. Mr. Stewart, when you're ready. Thank you, Your Honor. May it please the court. I'm Scott Stewart on behalf of the United States. In this case, the district court held that an alien who was issued a final removal order, who is removed, who re-enters the United States unlawfully, has his prior removal order reinstated, and enters withholding only proceedings, is subject to detention under 8 U.S.C. Section 1226, a statute that by its terms applies only, quote, pending a decision on whether the alien is to be removed from the United States. Respectfully, the district court erred, and this court should reverse. The statute here establishes, the INA establishes, and relevant legal principles confirm that 8 U.S.C. Section 1231, not Section 1226, governs detention in these circumstances. Section 1231 applies by its terms when an alien is ordered removed. It therefore governs detention of an alien with a reinstated order of removal who is in withholding only proceedings. As we've explained in our brief, Your Honor, the text, the structure, the history, and congressional aims of the statute and relevant legal principles all lead to the same conclusion, and as well as the decisions of the Third and Ninth Circuits. Section 1231 governs here. I'll start with, starting with the text, Your Honor, of Section 1231 itself. Can I jump in and ask you a question? I find this case difficult, and I'm trying to get my hands around where the points of dispute are. So, in your brief, you summarize the petitioner's position as being that, first, 1231 applies only when the government has authority to actually remove someone. Present authority to execute a removal order. And second, the government doesn't have that authority while a withholding only proceeding is ongoing. That's their position, according to you. Correct, Your Honor. So, which part of that do you disagree with? Do you, is your position that 1231 does apply even when the government lacks authority to remove? Or is it that the government does, in fact, have actual authority to remove someone in the middle of a withholding only proceeding? Or maybe both? I think both, Your Honor. I think because, as a starting point, the actual authority to remove focuses on the wrong piece. Section 1231 and Section 1226 really deal with the legal standing of the petitioner. Has the petitioner been ordered removed, or is there a decision pending on that issue? So, you disagree with the entire premise. 1231, in fact, applies even if there is no current authority, the practical authority to put the person on a plane. I think that's right, Your Honor. I do want to be careful because, as, of course, Your Honor can tell from the briefs, there can be authority to remove. There's just the risk of getting caught in the difficulties of the language here. But we do disagree also with that we would lack the authority to remove in these cases. All we lack the authority to do is to remove to a particular country, a country of potential withholding. So it is the government's position that while someone is litigating their withholding only proceedings, they can be put on a plane to a different country without any further ado? Correct, Your Honor. I mean, if they… Can I ask you that? How does that work in terms of judicial review? Because the outcome of the withholding only proceeding is supposed to be reviewable. But you're saying, I mean, wouldn't that render it effectively unreviewable, the person's on a plane in another country? Do we have to issue stays? There's really nothing to stay because the only issue in the withholding only proceeding is whether somebody's removal will be withheld to a particular country, Your Honor. If they're removed to another country, then unless they affirmatively express a fear of going to that country, which… Well, what if they do? Then the steps would be, okay, we evaluate whether you have that fear or screen for it. Do they have to be given notice? The Seventh Circuit has held that you can't just throw someone on a plane in the middle of a withholding only proceeding to a different country, that there's going to have to be a process there. I guess what I'd say, Your Honor, is it's not an issue that has been thoroughly fleshed out in this case because I'm not aware that any of the named class members had this issue. But of course it would make sense, right? So if I was a dual citizen of two different countries and I'm ordered removed or reinstated in order to remove, and I say, listen, I have a fear of going back to Ireland because of religious persecution, but I'm also a citizen of Israel. And then I have a chance to make a withholding claim and I only express a fear, reasonable fear, of being returned to Ireland, it would seem, you know, I don't see any reason why I could not immediately be returned to Israel because I had an opportunity to claim withholding with respect to either country. I chose not to. At least under that scenario, that would seem like an easy example where you could be removed even if the withholding on Ireland was pending. Can I ask you, what about people who are not dual citizens? Would the same rule apply to them? Would you say that every alien has an obligation, if you say we're going to deport you to Honduras and they say, they raise a credible withholding claim, do they also have to list in the first instance, here are the other countries that you might conceive of throwing me on a plane for in the middle of my withholding proceedings? But you shouldn't, because the Seventh Circuit says it doesn't work that way, that actually the government has to tell the alien, here's the other place we're thinking of sending you. And there has to be a process around that. So do we need to split with the Seventh Circuit to embrace your position here? No, Your Honor, because again, I don't think we get into the procedures here. And I think the critical point is the finality of the removal order. When you have final judgments in general, there are other things that could happen that could come between the execution of the judgment. It doesn't destroy the finality. I believe Judge Richardson, your outline does well to reflect what's at stake in withholding type proceedings. Well, to have a final order, don't you have to have the designation of where you're going to send that person determined? Sorry, Your Honor, you usually do, Your Honor. Well, why would it be a final order if you don't have the destination determined? I think the governing regulations here say that, you know, even if they're, the country, I guess I would say the country identified is not the binding one that needs to be removed to, that needs to be the country of removal. If for reasons the individual can't be removed to that country, the statute and regulations provide other ways to remove folks to different countries. Well, for 1231 to apply, does the removal period have to have started? I mean, I think, I think yes, when there's a final removal order, the removal order is triggered, Your Honor. But I guess the reason I don't, I think really the key language that I think is the focal point is the language saying when an alien is ordered removed. The removal period, sometimes it can be extended, sometimes things can go beyond the removal period. But the really critical distinction for what kind of detention governs is whether there's a pending decision on removal or whether somebody has been ordered removed. And the critical thing is whether somebody has been ordered removed. And under Section 1231.85, the alien in these kinds of cases has had that determination made. Let me ask a slightly different question if I can. If I read these two statutes, just hypothetically, and I read 1226 and the language there, and I say that seems to describe a withholding proceeding. And then I read the 1231 language and I say that seems to describe someone who has a reinstated order of removal. So in other words, that both 1226 and 1231, in contrast to both parties, they both read that they apply. If I came to that conclusion that based on the language, structure, context, everything, that both 1226 and 1231, as we've described, they both apply to these particular petitioners or petitioners in their situations. Tell me how I would go about deciding which controls. So you could imagine that 1226, there is a decision being made about how they're going to be removed. And so that may well fall within 1226A. But under 1231, I think the language 1231.85 suggests that there is a final order. Now, is it final, final? You know, that's a different question. And there are levels of finality. The district court issues a final order that we can appeal under 1291. That means it's final for the district court. That doesn't mean it's final for us. There can be different levels of finality. But if I found it fell in both buckets, how would I decide which bucket controls? Sure, Your Honor. I think you can look to a couple of guideposts here. One, I think the Supreme Court's decision in Zabidas provides a good indication here. The alien in that case was the case was about post-removal period detention. The court was clear throughout, didn't question that it was squarely interpreting Section 1231A.6. It was clear that the post-removal order period was governed by Section 1231. And the court, as the Ninth Circuit recognized in Padilla-Ramirez, accepted that that governs even in cases of prolonged detention. And it also hits back at the idea that the Supreme Court thought that Section 1231 failed to govern just because there was a practical or logistical difficulty in removing somebody. In that case, as Your Honor knows, there were multiple countries that Petitioner and Zabidas couldn't be removed to. But it was clear that he'd been ordered to remove Section 1231 governed. So I'd say Zabidas is a good guidepost. Zabidas says there's probably a due process right at some point or at some level to a bond or release hearing. Certainly a constitutional concern, I think, Your Honor. Bounds of it are disputed in some instances. I think that's one, Your Honor. I'd also that there is, and I want to be sure to save some of my time for rebuttal, Your Honor. It would be very odd, I think, if somebody were to go through this process where they went through the 1226 process where they could be detained, where they went through removal proceedings, were order removed, where they were put into the removal period, presumably detained, then removed, and then committed the felony of illegal reentry when they could have gone to a port of entry, they could have done other things, had the removal order reinstated, and yet somehow end up with a better detention circumstance than they would have after they had already been ordered removed. It would be very strange for somebody who commits what is under our laws a felony to be better off because of it, Your Honor. And the third point, Your Honor, I would say, as we've explained in some of our deference points, the agency does see in its regulation Section 1231 as governing in these circumstances. So if Your Honor had concern about equal poise, I think those are some good guideposts. Can I ask you a question? Because one thing that I think cuts in the opposite direction, but I would like to hear you address it, is if you thought both statutes could apply and you put it under, I'm going to get it mixed up, but if you put it under 1231, then you're sort of creating a situation in which the Attorney General will routinely and predictably in a whole class of cases not be able to meet that 90-day deadline. And that just seems odd, like you ought to construe a statute in a way to avoid a situation like that. And I understand, I mean, you say in your brief there the period can be extended. It can, but there's a 90-day deadline and it would be odd for Congress or for us to construe a statute so that the AG will be in violation of that deadline predictably, routinely in this entire class of cases. Shouldn't we try to avoid a result like that? Your Honor, I think the best way to look at the 90-day period is to say, look, Congress believed when it enacted these statutes that once you have somebody who's been ordered to remove, the Attorney General, or now the Secretary, would move with dispatch to remove them. They envisioned that it would happen quickly. Resource and practical constraints make that difficult. I think the Supreme Court in Zambia does. Well, you'd never be able to do it when someone has a credible withholding. I mean, is it your position that Congress thought even if someone had a credible withholding only claim, are we sure we can wrap that up in 90 days, including appellate review? Your Honor, I'm not sure. They didn't think that. I'm not that fast. I don't know how fast DHS is, but we're not that fast. Judge Harris is pretty fast. Very good. Your Honor, I think the point that I would emphasize is that as my friend acknowledges, in the vast bulk of cases with reinstated removal orders, there isn't a meritorious claim for withholding. It would be odd to treat this group differently, especially when people who are granted withholding can still be detained. So Congress did understand that there are groups of folks who are in a different situation because they have been ordered removed, and therefore detention or lessened liberty is more appropriate. Why wouldn't you say 1231A3 sort of contemplates that idea, right, sort of what happens after the 90-day period, right? And I'm not exactly sure what 1231A3 means, but it certainly contemplates that Congress sort of recognizes that there is an after the 90-day period with respect to detention. A2 talks about the 90-day period. A3 says, I think as Judge Harris recognizes, there are going to be circumstances where that doesn't happen, and here's sort of the resolution of that. Right, Your Honor. I think 1231A3 is quite helpful to that point. I think 1231A6 and just the Supreme Court's recognition of the practical difficulties in Clark and other cases that this is really, look, there are resource constraints. Congress, its hope and its intention was that these things would happen quickly, but it is a difficult problem, and practical points do intervene. If I may, Your Honor, I'd like to say something. Well, can I just ask you just a very quick factual question? Thank you, Your Honor. Yeah, really quick fact. So you just mentioned A6. Is A6 the source of authority under which this class of immigrants is detained after the 90 days? Once the removal period ends, why are these people still being detained under A6? Is that right? I don't know what else they'd be being detained under. I believe so, Your Honor, but if I'm mistaken on that, I can. Okay. So I really am just trying to figure out what is at stake in this case. So if they're being detained under A6, they do get the Attorney General has to make a determination that there will be a risk to the community or unlikely to comply if released. And so the difference is that decision is not reviewable by an IJ, whereas if they were being held under 1226, it would be an IJ basically making that same determination. Is that what's going on? I'm just trying to figure out what's at stake here. Right, Your Honor. I think what we'd say is that any concerns of prolonged detention in these circumstances are the ones imposed by the Supreme Court's decision. I'm sorry. I was just asking really a technical stuff. I'm just trying to figure out why does this case matter? Because it seems like if they're being detained under A6, either way someone is making this determination before they can be detained that there are risks to the community or unlikely to comply with the order of removal. So I'm just asking very technically, not for an argument, just is the difference who is making that determination? I think it really is the Bond hearing piece, Your Honor. And I'm sorry I don't have kind of a deeper answer to that. I think the big thing is no Zobby Doss claims have been pressed in this case. So it's the big dispute here has been are there Bond or Joseph hearings or are there not? Okay. Thank you. You have some time, Mr. Hughes. Thank you, Your Honor. And may it please the Court, Paul Hughes for Plaintiff's Appeals. Section 1226, not Section 1231, governs plaintiff's detention. I'd like to make four main points. I'll start with the text, then turn to the appellate rights, then turn to the broader structure of the withholding statute, and then discuss the government's conduct, which we believe is inconsistent with our argument that the removal period has begun. To begin with the text, though, for the government to prevail in this case, they must demonstrate that the removal period for these individuals has begun, even though the government lacks authority to remove them anywhere. That would be a very strange conclusion. Section 1231 defines the removal period as the period during which the government, quote, shall remove the alien from the U.S. within a period of 90 days. And all of the three triggers for what starts the removal period, as Judge Brinkman explained, removes an impediment from the government's actual authority to remove somebody from the United States. Until the government can actually physically place somebody on a plane, it just does not make sense to say that the removal period has, in fact, begun. And the government, again, continues to suggest that they can remove these individuals while withholding only proceedings are ongoing by pointing to the contention that there could be a third country removal. That's incorrect because the government must take two independent steps before they have that authority. But let me say, just to be totally clear about this, if the government proceeds through those steps and they do have actual authority to remove somebody to a third country other than the one at which the withholding only removal proceeding is targeting, we agree at that point the removal period would begin because the government has that actual authority. But this hardly ever happens in practice because there are two things the government must do. First, the government must identify the existence of a third country that falls within the statutory requirements. Section 1231B2E puts very sharp constraints on the range of countries that the government can designate. It can just not designate any country at random out of the 200-plus countries around the world. It must be one on the list of B2E. There is a catch-all provision, which is Roman at 7 of that provision. But as the Supreme Court said in JAMA, that only applies if that third country has pre-approved removal of this individual, either on an individualized basis or on a general basis. And so, as a practical matter, we know from the brief of the American Immigration Council that was filed in this case, as well as the experience of our own plaintiffs, that third country removals almost never happen. The American Immigration Council looked at fiscal year 2017 statistics and showed that over... I think we understand, or at least I understand the practical issues. I want to talk to you just for a second, if I can interrupt, about sort of the more statutory point. And I think I want to come back to the question that I asked your colleague. But let me start with this. 1231A5, the reinstated order, includes language that sort of says it's not subject to being reviewed, the reinstated order, and you may not apply for any relief. Right? So under your reading of this, why does that not preclude withholding at all? I mean, you might read that sort of naturally and say that withholding is entirely precluded based on 1231A5. I don't think it is, but why under your sort of theory of the case? Well, Your Honor, I think that highlights a problem with the government's theory, because by focusing on 1231A5 in a vacuum, if one just looked at that language, I agree with you, Your Honor, that would suggest that there's no relief available, including withholding. But twice the Supreme Court in both Fernandez-Vargas and Moncrief has said, no, one must look to the broader context of the immigration statutes, and withholding both under the Convention Against Torture, that's far codified as a note to Section 1231, as well as the statutory withholding provision within 1231. Both of those provide a right to withholding that exists notwithstanding the language in 1231A5. But the rationale for that, which is, that's why I'm a little curious, your sort of read is, yes, but you just ignore it because of other provisions. It seems easier to say the reason that it doesn't run afoul of it is the withholding proceeding is not a review or challenge to the reinstated order, right? It's a separate proceeding to determine the means of executing that order, right, which is independent of whether there's a removal order at all. Well, Your Honor, I'm not sure I disagree with any of that, but the reason that our position is correct, because the question is not whether or not a reinstated order of removal is ultimately reinstated. Of course, it's reinstated under 1235A5. The question is, when does that occur? When is that proceeding of reinstatement final? And this is how the regulations understand the reinstatement. According to 1208.31A, reinstatement is a process. That process begins when that Form 871 is filled out. There are several of these in the Joint Appendix, including Joint Appendix 77. And so the question here is, when is that process one that is considered properly administratively final under 1231A1B, Romanette 2, to start the removal period? And this is where four different circuits have looked at this in the context of jurisdiction, the Fifth Circuit, the Tenth Circuit, the Ninth, and the Eleventh. They all agree that that process only becomes final upon the conclusion of the withholding-only proceedings. And once those conclude, that's where it becomes final. And this is critical. But there's a difference between final and, like, final, final. I mean, there are stages of finality, right? We talk about, like, a district court's final order, which is appealable to this court. So we think about finality different. And as I'm reading 1231, it suggests to me that the finality is the reinstated order, right? That order is going to remain no matter what happens in the withholding, right? So now it may not be able to be executed upon, but the order, that order is final. The execution of it is not. And I get you want to sort of combine those two, but I'm not sure reading 1231A5 doesn't suggest that we ought to separate them. Well, Your Honor, I think there are several reasons why finality for purpose of removal has to be the same as finality for purposes of appellate review. Because if we separate those two, we lead to a very significant practical problem that doesn't make sense in the context of the statute. And that's to say that when there is judicial review of a withholding-only order, that is as far as the section 2242D. It's codified as a note to section 1231. It says that review of the withholding-only procedure must occur as, quote, as part of the review of the final order of removal. So for that, that order of removal has to be deemed final only when the withholding-only proceedings end or else there would be no judicial review. Yeah, but here, there is no review of the order of removal, right? Because it's unreviewable. There's review of the withholding, right? The reason there's not review of the withholding order is because it is final under A5. Now, you can have an intervening circumstance, just like in a criminal case. You can have a final judgment with a habeas claim, right? You can have a final removal order with a challenge to the method of execution. And I mean execution as far as removal, not in the capital context. But, like, that execution seems to be a separate question from the order of removal. Well, Your Honor, something about that especially, it's true that the underlying order of removal might not be subject to judicial review, but the process for reinstating it most certainly is. So an individual may be able to say, look, to reinstate the order of removal, you have to show that I entered the country unlawfully. But an individual can challenge that and say, I did enter the country lawfully. Or they can say, I'm not the person that's identified in the underlying order of removal. Those are things that are about, separate from withholding only, that are about the process of reinstating that order. And all the courts that have looked at that have found that that is something that is subjectly, that is appropriate and subject to judicial review by this court. Can I ask one more question and then I'm going to stop because I'm confident my colleagues have questions too. If I disagreed with you on that question, and this is the question I asked your colleague earlier. And I concluded that under the language structure context of 1231 and 1226A, that both of them apply to your clients. That they both, that both categories apply. Can you provide any guidance for me on how I would go about choosing which of those controls? So a few things about that, Your Honor. First, I think the way Congress structured them is Congress viewed them as alternatives because they have different kinds of detention mechanisms. So I don't think Congress viewed it as being coextensive, but rather you're either in 1226 or you're in 1231. But if the court disagrees with me on that, I do think that 1226 provides Congress's view as to what would occur in longer term detention. When ongoing legal proceedings are still pending that are determining whether or not an individual is actually going to be practically removed from the country. In that context, Congress may. Where do I get that? Like I get, where do I get that from? So that little summary of Congress's intention, where is that? I think that's just the policy that's expressed by the text of section 1226. The language says 1226 applies when the decision of whether the individual is, quote, to be removed is one that remains, quote, pending. And then the nature of detention during that period of time is consistent with the congressional judgment that some people under 1226 are sufficiently dangerous because of past criminal activity. They're subject to mandatory detentions. Of course, it's Congress's judgment. And then for all other individuals, if the individual is able to prove to an immigration judge's satisfaction that they are neither a flight risk nor a danger to the community, that they have the ability to either seek bond or parole during the pendency of these very lengthy immigration proceedings. Can I just ask you the same question I asked your colleague? So is what's at stake here who is making that determination? That it's the attorney general or, you know, the attorney general's designees if the person is being detained under 1231 and if the person is being detained under 1226, it's an IJ? Yes, Your Honor. I think that's principally the distinction. And the brief of the American Immigration Council details some of the very substantial practical and constitutional problems that have been identified with the administrative proceeding that the government has established for determining these post-custody review proceedings. And I think the statistics back up that effectively no one has ever actually released under those review proceedings. And so by contrast, the immigration judge is a neutral arbiter who can make the determination. Of course, the burden still rests with the immigrant to be able to demonstrate to the judge's satisfaction that this is the kind of person that can be released during the pendency of their proceedings. But Section 1226 entitles the individual to this hearing before a neutral immigration judge to be able to make that determination. But to turn back and to further the point as to why it's important to make sure that finality of removal is coextensive with finality for purposes of appellate review. If those two are decoupled, you lead to the very substantial practical problem where the government would have authority to remove an individual, but the case would not be final. So this court would not have jurisdiction over it. The problem that would happen in that circumstance is you'd have a very significant temporal gap where this court could not issue a stay of removal proceeding even though the ongoing withholding only proceedings are continuing. So you'd have this lengthy gap where the government could remove somebody even though they are claiming that if they are removed to that country, that they've already demonstrated to either an immigration officer or an immigration judge's satisfaction that they have a reasonable fear of torture or extraditial killing if they're removed to that place. The government sets up a structure where they would have the authority to remove somebody, and this court would not have jurisdiction over this case in order to enter a stay of that proceeding while it waits for the withholding only proceeding to conclude and thereby have judicial review over that. We think it's a very strange understanding of the statute and not the one Congress wrote. Do we have to overrule Mejia versus Sessions in order to sort of take your view? I mean, it seems like Judge Diaz's opinion there finds that at least for some context, the order's final independent of all the rest of this. Not at all, Your Honor. Our position is entirely consistent with the Mejia case, and I don't think the government suggests that we require overruling by any stretch. The court there simply noted that there is no jurisdiction to go back and challenge collaterally the actual substance of the original reinstated removal order, and we certainly don't suggest anything to the contrary. But it also determines the date on which it's final. That's the part of it that sort of seems odd to me. And again, maybe it's not final, final, final, right? But at some level, that court says the order's final when it's reinstated. Like, that's the final date, which is sort of inconsistent with the idea that you're saying, well, it's not really final because withholding is still going on. Actually, Your Honor, I think the facts of Mejia only support and if not sadly adopt our position because in Mejia, there was a withholding only proceeding that occurred in that particular case. And then the court found as to that whole process, it did have jurisdiction to review that because it had jurisdiction to consider whether or not 1231A5 barred that individual from bringing an asylum claim. And the court found that it had jurisdiction over that asylum claim. The only way the court could have had jurisdiction over that asylum claim because there was a gap was not if the – was that the jurisdiction over the underlying reinstatement process had to have – that 30-day period for appeal had to begin running from when the reinstatement process was final. Or else the court wouldn't have had jurisdiction to decide the asylum question because the petition for review of that case would have been long time barred. So the court didn't discuss any of that, and that's the implicit part from your – I agree, Your Honor. That's the implicit part. So it's – that was not discussed on the face of the opinion. But I certainly don't think the opinion is inconsistent in any stretch of our argument. And the implicit jurisdictional understanding of how the court got to the 1231A5 asylum question is – again, it's implicit, but it implicitly supports our position. And the American Immigration Council provides more fulsome discussion of why that's so in their amicus brief. Now, additionally, the government's own conduct in this case is inconsistent with the argument that the removal period has begun. The regulations require that when the 90-day removal period begins, the government has to take certain practical steps in order to prepare an individual for being removed from the United States. The regulation, for example, 8 CFR 241.4G2 says that the government is obligated to obtain travel documents so the individual can be prepared to put on the plane and return to the country to which the government is removing the individual. That is not a discretionary obligation. The regulations say the government shall do this during the removal period. That's sensible because this is the 90-day period that Congress designated for the individual to actually be removed. But this record is clear for the named plaintiffs in this case. The government has not attempted to get travel documents for any of these individuals. The obligation of government would be under if the removal period had begun. That's sensible. The government has not actually gone about trying to get travel documents because the government doesn't have authority to remove these individuals anywhere. So that's all consistent with our fundamental point that it would be exceedingly strange to say the removal period for these individuals has begun long before the government has authority to remove them anywhere. In addition, as I touched on a moment ago, this is consistent with the purpose of both the underlying statutes. Section 1231 is detention which is designed to be 90 days. It has some flexibility for it exceeding when strange or unusual things occur. But that reflects a congressional judgment that removal will be usually quick in those circumstances. Whereas 1226 is structurally designed for longer term detention that gives immigration judges flexibility to adapt to those circumstances. That fits the circumstances here. Now, my friend makes the point that Section 1231A5 is placed in the context of Section 1231 generally. And we think that's, of course, a sensible place for Congress to put it. Because as our brief documents, more than 98% of individuals subject to a reinstated order of removal will be put into removal proceedings and the removal period will begin quite expeditiously. This case addresses the less than 2% tale that as the government's regulations recognize is an exception to how this process usually works. So again, this case is ultimately about that exception. The government, again, suggested arguments with respect to deference. We simply don't think there's any textual ambiguity here. But even if there were textual ambiguity in this case, there's simply no regulation that speaks with any remote degree of clarity. As all the courts who have looked at this have said, no courts agree with the government's position on deference. They say getting to a position on deference truly just requires assuming the underlying conclusion between the dividing point between 1226 and 1231. I just want to get a handle on how much of your argument turns on sort of the practical reality that mostly if people are successful in a withholding-only proceeding, they are not, in fact, removed from the country. If that were different, if it were the case that 90%, 95% of the people who succeed in a withholding-only proceeding are ultimately removed to a third country, would that suggest that really the person is removable and all we're talking about is to which country the person will be removed? I don't think that actually bears on the ultimate legal outcome, Your Honor. I think the answer is the 1231 attaches when the government has that authority to remove when the removal period begins. What was the second step? You were saying there are two steps before a person can be removed to a third country. You have to identify the third country, which is no picnic because it's a limited category. What was the second step? Sorry, Your Honor, I did not get to that. The second step is, as Your Honor was suggesting with my colleague, as the Seventh Circuit said, you have to provide the individual notice of the third country to which you're going to remove them. So that way, if they have a legitimate withholding-only claim as to that country, they can bring it. So one could imagine an example where an individual who's gay claims that they would have a fear of persecution if they were being removed to Iran, and perhaps Pakistan is a country under which the statute might allow the government to designate. Well, that individual would alternatively have an ability to bring a withholding-only claim to that country as well. So for the government to have that authority, it has to find first a country that the statute permits it to remove the individual, and it has to give the individual notice. Once the government does those things, if it has legal authority to place somebody on a plane and remove them, we agree at that point, 1231 applies. But that's not in any of the class numbers cases, and that's not in this case. And I can just point out, our plaintiffs bear this experience out. Mr. Castro-Castro won withholding relief in November 2017. That was more than 16 months ago. Mr. Kalacha won withholding relief in June 2018. That was more than nine months ago. These individuals have not been removed to any third country simply because there's no country that's available. And it's not the case that the government has authority to remove plaintiffs in these circumstances. The question of whether or not these individuals will actually be removed or to be removed from the United States is precisely the question that's issued with withholding-only proceedings. It's precisely why 1226 applies and why the removal period of 1231 has not yet begun. All right. Thank you very much, Mr. Stewart. Thank you, Your Honor. A few points. First, I'd like to emphasize that I didn't hear a meaningful response to the point I made in that we made in our briefs about Zabidas, that the petitioner's case and the position in this case is not consistent with that decision. I think to highlight a key point there is Section 1230.31 does not depend on the actual ability to remove. My friend's position is that authority to remove is defined to mean when we, the government, can actually put somebody on a plane where he can go and be accepted. If that were true, then Zabidas would be profoundly flawed because the precise problem for Petitioner Zabidas in that case was that the United States could not simply put him on a plane where he would go somewhere to be removed. Multiple countries have rejected that possibility. So there is this profound flaw in my friend's position with Zabidas. Was it argued in that case which statute they were being held under? I mean, the Court didn't decide in Zabidas that those petitioners were being held under 1231, did it? Was that argued in that case? I thought everybody just assumed, look, this is a statute we're under, and the argument proceeded from there. Your Honor, I'm not sure that it can just be taken as a passing assumption. I mean, the whole point of the opinion is to interpret Section 1230.86. Did anybody argue that that statute doesn't apply? I'm not aware that the 1231, 1226 distinction was presented in joint issue there, Your Honor. But, again, I would emphasize that just the understanding there and the fact that it's not a passing, you know, we assume on this basis. Genuine question. Understood. Let me ask you about the – doesn't the mandatory detention period provision in 1231, doesn't it hinge on the removal period? It does not, Your Honor. It hinges on whether, quote, on whether an alien is an alien who has been ordered removed. And it then defines a removal period on the understanding and the expectation and the hope that the Attorney General, now the Secretary, will effectuate a removal order within that period or soon after that period. But it's not necessarily it just disappears after 90 days, that kind of a thing. It stays – the authority stays when somebody has been ordered removed, even if they can't be removed within the removal period. But mandatory detention is for the removal period. I mean, it absolutely ties detention to the removal period, doesn't it? Isn't that what – to Section 2, detention during the removal period, the Attorney General shall detain the alien. I understand that there are exceptions and that the statute contemplates sometimes the Attorney General will detain beyond that. But to the extent that there is mandatory detention, it is for the period of 90 days, right? I wouldn't – I guess I wouldn't necessarily commit to that, Your Honor. What I would say is – Okay. You will commit that that's what the language of the statute says, right? I will agree that it says shall detain the alien during that time. What I'm not going to concede, Your Honor, is the idea that there's a loss of authority after that time. No, no. But you then go to – right. I mean, what she's saying is that's A2. You may get authority from A3 or A6 or some other place, right? But the mandatory detention of A2 is tied to the removal period. I mean, that seems like an easy – I mean, it does begin during the removal period. Yes, Your Honor. I mean, I take that point. I don't think it was intended to be a trick question. I just didn't want to suggest that the authority – what I want to be careful about is suggesting that there's authority to detain is to tie to it. No, no. And when they – I think when we were using the term the mandatory detention, we're referring to Section A2 because the other sections like A6 that we talked about before are not mandatory, right? They're at least some discretionary authority within the Secretary in this particular context. But A2 is mandatory, and so we think of it differently, and it's limited to the removal period. I think that's right. I think that's right. It's different than, say, A6, Your Honor, that allows – that confers discretion with MAG. I don't understand why this is hard. I'm just trying – and I am trying – that's why I asked you under what authority are these people being detained after the 90-date period. I'm really trying to figure out how the statute works, and you could be more helpful if you would just – so Section 2 says there's mandatory detention during the period of the removal period, and then Section 3 says at least normally if you're not removed within the removal period, you're going to be subject to supervision. You're not going to be detained. So you get through two sections that make pretty clear detention is tied to this 90-day period, and then there absolutely is an exception in A6, which I built into my question, and I've been asking you about how does that one work, and your colleague was able to fill me in, that the AG does make the determination, the AG's designees, and so what's at issue here is whether we're under this – these people are being detained under this exception, A6, or whether they're being detained under the other statute in which case they get to go before an IJ. Is that also your understanding of what's at stake here? I think that's right, Your Honor, and I'd just say DHS, the actor in place for A6 now, and folks can also file petitions and do. I see my time's up. Can I know one or two things very quickly, Your Honor? Yeah, real quickly. My friend pointed out to 8 CFR 241.4 G2 and suggested that the conduct of the government in this case is inconsistent with a 1231 approach because that provision supposedly requires the attorney general to take certain steps. That provision in fact says, quote, the district director shall continue to undertake appropriate steps to secure travel documents. It's not a hard requirement to secure travel documents, so I just want to be very clear on that. Finally, Your Honor, as we've explained in our brief, there's no oddity about different approaches to finality to a removal order and judicial review here. I think the best way to understand that is the finality, the existing finality or immediate finality of a reinstated removal order is a consequence of Congress's decision in Section 1231A5 to take a harder line on reinstated removal orders. There is a need the courts have seen to interpret judicial review so that it doesn't foreclose review. Somebody doesn't foreclose a review of future decisions, and it also reflects Congress's desire that petitions for review don't be filed piecemeal, but instead be filed at the end of proceedings to consolidate all issues.  Thank you, Your Honor.
judges: Henry F. Floyd, Pamela A. Harris, Julius N. Richardson